Filed 3/4/15; pub. order 3/19/15 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TRILOGY AT GLEN IVY MAINTENANCE ASSOCIATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> SHEA HOMES, INC., et al., <br><br> Defendants and Appellants. | D066483 <br><br><br> (Super. Ct. No. RIC10025131) |

APPEAL from an order of the Superior Court of Riverside County, Michael C. Perantoni, Judge.  Affirmed.

Connor, Fletcher & Hedenkamp, Matthew J. Fletcher and Douglas A. Hedenkamp for Defendants and Appellants.

Epsten, Grinnell & Howell, Rian W. Jones and William S. Budd for Plaintiffs and Respondents.

Plaintiff Trilogy at Glenn Ivy Maintenance Association (Association) and various homeowners (together plaintiffs) filed this action against defendant Shea Homes, Inc., and others (together Shea) alleging, essentially, that Shea improperly diverted revenues

from a contract that should have been paid to Association. After Shea sought and obtained judgment on the pleadings, plaintiffs filed an amended complaint, and Shea responded by moving to dismiss the amended complaint pursuant to Code of Civil Procedure[1] section 425.16, commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) The trial court denied the motion and this appeal by Shea followed.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. Relevant Facts[2]

Shea developed and built a master planned community (the Trilogy Project) in Corona, California. Association is the homeowners association that maintains, manages and governs the Trilogy Project.[3]

In August 2001, when Shea was still the sole owner of the land (the Property) on which the Trilogy Project was ultimately built, Shea entered into a contract (the Contract) with AT&T Broadband (AT&T) to facilitate the provision of broadband communication

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] We accept as true for purposes of our analysis the facts averred by plaintiffs (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733), and only consider Shea's evidence to the extent it defeats as a matter of law the evidence submitted by plaintiffs. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269.)

[3] The remaining plaintiffs below, and respondents in this appeal, owned homes in the Trilogy Project.

services to the residences and businesses within the Trilogy Project. Under the Contract, Shea agreed to construct (and to grant AT&T a license to use) a conduit/duct system on the property to install and maintain AT&T's cables and communications equipment, and granted AT&T an easement over the Property to install and maintain the equipment. In consideration for these and other covenants by Shea, AT&T agreed to pay Shea the amounts specified in the Contract.

The recorded covenants, conditions and restrictions (CC&R's) governing the Trilogy Project provided that the Board of Directors for the Association (the Board) had the power to enter into exclusive telecommunications contracts. Shea and its representatives served on and controlled the Board at the time the Contract was entered into between Shea and AT&T, and Shea remained in control of the Board until mid-2006. During this period, Shea and its representatives owed fiduciary obligations to the Association.

Shea did not disclose, and plaintiffs did not know of, the Contract or the payments Shea was to receive under the Contract until the spring of 2010. At that time, Association's manager opened a letter addressed to "Trilogy at Glen Ivy." The envelope contained a check from Time Warner Cable (AT&T's successor in interest under the contract) in the amount of $175,000 made payable to Shea, and a cover letter that stated the check was for the payment owed under the Contract. After receiving two more checks for amounts due under the Contract, both of which were also made payable to Shea, Association contacted Time Warner Cable and asked that the checks be reissued in Association's name because it was Shea's transferee. Time Warner Cable ultimately

3

placed stop payment orders on the checks and declined to make further payments until Shea and Association resolved the conflict over who was entitled to the payments. Association corresponded with Shea and asserted it was entitled to the payments. Shea did not respond and Association filed the present action.

B. Procedural History

*Genesis of Plaintiffs' First Amended Complaint (FAC)*

Association filed the present action alleging several common counts premised on the contention that, because the Contract's benefits and obligations constituted an agreement that ran with the Property and Association was the successor in interest to Shea's interest in the Property, Association was entitled to the amounts received and to be received under the Contract. Shea moved for judgment on the pleadings arguing that, because Association was not a party to the Contract, nor as a matter of law did the Contract constitute an agreement running with the land, Association had no rights in the contract to be enforced and the complaint should be dismissed. Association opposed the motion, asserting the complaint adequately stated facts under various theories that supported the common counts. Association alternatively argued that, even were the court to grant the motion, it should provide Association leave to amend because, in addition to providing plaintiffs an opportunity to more fully articulate the theories supporting their common counts, plaintiffs could state a claim for breach of fiduciary duty against Shea under *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783. Plaintiffs noted that Shea, when it controlled the Board, was subject to fiduciary obligations under the *Raven's Cove* court's rationale and holding that, because

4

undivided loyalty is one of those duties, "a developer and his agents and employees who also serve as directors of an association, like the instant one, may not make decisions for the Association that benefit their own interests at the expense of the association and its members." (*Id*. at p. 799.) Plaintiffs asserted a claim could be based on the allegations that Shea, by entering into an undisclosed contract with a vendor that was solely for Shea's benefit at the time it controlled the Board and that obligated the Association, had breached its fiduciary duties.

The court granted judgment on the pleadings, but also granted plaintiffs leave to amend the complaint. Plaintiff's FAC, the subject of the present anti-SLAPP motion, alleged the same common counts but added claims for breach of fiduciary duties, unfair business practices, breach of the implied covenant of good faith and fair dealing, and for declaratory relief. The FAC alleged Shea and its agents were the original directors and retained control over the Association until mid-2006 and, "[a]s such, [Shea] owed fiduciary duties of utmost loyalty, trust, confidence and good faith to [Association]," and alleged Shea breached its fiduciary duty to Association by (1) not disclosing the existence of the Contract, (2) not causing the Contract to be recorded as a covenant running with the land, (3) not disclosing its self-interest in the Contract under which it received compensation, (4) "[*r*]*epudiating* the automatic transfer of [the Contract] to [Association] pursuant to Section 2.11 of the CC&R's," (5) converting the compensation under the Contract to Shea's own benefit, and (6) usurping the corporate opportunity for Association to enter into contracts for telecommunications services.

*The Anti-SLAPP Motion*

Shea, focusing and seizing on the italicized word "*repudiating*," filed the instant anti-SLAPP motion attacking the FAC. Shea's motion argued the first prong under the anti-SLAPP statute was satisfied because a core component of the breach of fiduciary duty claim, and indeed the raison d'être for the amendment, was that Shea had made the claim (in its motion for judgment on the pleadings) the CC&R's entitled Shea permanently to control and profit from telecommunications services, and it was *this* claim that necessarily formed the basis for plaintiffs' allegation that Shea had "repudiated" its obligations to plaintiffs. From this predicate, Shea argued protected conduct—i.e., Shea's position in the current litigation—was an integral component of plaintiffs' claim for breach of fiduciary duties, because Shea's "repudiation" could only have been manifested by Shea's position in the current litigation, and Shea therefore asserted it had satisfied the first prong under the anti-SLAPP statute and thereby shifted to plaintiffs the burden of providing evidence demonstrating probable success on the merits.

Plaintiffs opposed the anti-SLAPP motion, asserting the complaint on its face showed the claims asserted were based on Shea's acts and omissions occurring years before litigation was even contemplated and therefore were not premised on litigation activities. Plaintiffs contended Shea's pre-litigation actions made clear its position that it intended to retain the revenues from the Contract in violation of its fiduciary obligations,

and the mere fact Shea *re*iterated its position during litigation did not mean a claim based on Shea's pre-litigation repudiation became subject to the anti-SLAPP statute.[4]

The court found Shea had not met its burden of showing the claims asserted in the FAC arose from protected activity as contemplated by the anti-SLAPP statute, and denied Shea's motion.  This appeal followed.

## II

## LEGAL STANDARDS

### A. The Anti-SLAPP Statute

The anti-SLAPP law provides, in relevant part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  The purpose of the statute is to encourage participation in matters of public significance by allowing a court to promptly dismiss unmeritorious actions or claims brought to chill another's valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  (*Id.,* subd. (a).)

The anti-SLAPP law involves a two-step process for determining whether a claim is subject to being stricken.  In the first step, the defendant bringing an anti-SLAPP

---

[4]     Plaintiffs also argued there was some evidence that, if credited, would support a judgment in their favor and therefore they had satisfied the second prong of the anti-SLAPP statute.  Because we conclude Shea did not satisfy the first prong of the anti-SLAPP statute, we do not address these claims.

7

motion must make a prima facie showing that the plaintiff's suit is subject to section 425.16 by showing the plaintiff's claims arise from conduct by the defendant taken in furtherance of the defendant's constitutional rights of petition, or free speech in connection with a public issue, as defined by the statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.) If the defendant does not demonstrate this initial "arising from" prong, the court should deny the anti-SLAPP motion and need not address the second step. (*City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1594; *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 811.)

If the defendant satisfies the first step, the burden shifts to the plaintiff to demonstrate there is a reasonably probability it will prevail on the merits at trial. (§ 425.16, subd. (b)(1).) In this phase, the plaintiff must show both that his or her claim is legally sufficient and there is admissible evidence that, if credited, would be sufficient to sustain a favorable judgment. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5; *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 358.) In making this assessment, the court must consider both the legal sufficiency of and evidentiary support for the pleaded claims. (*Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 398-399.) On appeal, we review de novo the trial court's ruling on the motion to strike. (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 339.)

B. The Gravamen of the Claim Controls Application of the Anti-SLAPP Law

Our Supreme Court has recognized the anti-SLAPP statute should be broadly construed (*Equilon, supra*, 29 Cal.4th at p. 60, fn. 3), and a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a "garden variety" tort or contract claim when in fact the claim is predicated on protected speech or conduct. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90-92 (*Navellier*).) Accordingly, we disregard the labeling of the claim (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 522) and instead "examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies" and whether the trial court correctly ruled on the anti-SLAPP motion. (*Id*. at pp. 519-522.) We assess the principal thrust by identifying "the allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 189.) If the core injury-causing conduct on which the plaintiff's claim is premised does not rest on protected speech, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. (*Ibid*.)

III

ANALYSIS

A. The "Arising From" Prong

Shea argues the court erred when it concluded the breach of fiduciary duty claim did not arise, at least in part, from protected conduct.[5] Shea's argument is that (1) the FAC alleged Shea "repudiat[ed] the automatic transfer of [the Contract] to [Association] pursuant to Section 2.11 of the CC&R's," (2) this "repudiation" must necessarily have been based on Shea's unequivocal statements it would not perform, and therefore (3) the "repudiation" must necessarily be premised on protected conduct because the only unequivocal statements by Shea refusing to transfer the contract to plaintiffs occurred during and as part of the present litigation. Shea concludes the first prong was satisfied because the breach of fiduciary duty claim is rooted, at least in part, on protected conduct,

---

[5] Shea acknowledges the *only* aspect of the breach of fiduciary duty claim that even arguably arose from protected conduct was the alleged "repudiation" by Shea of its obligations under the CC&R's. Shea asserts some courts have concluded that, even when there are numerous allegations of otherwise unprotected conduct, any allegation of protected conduct (unless it is "merely incidental" to the thrust of the claim, see *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 419) is sufficient to satisfy the first prong and (absent a showing of probable success as to the protected conduct) will require striking the *entire* claim. (See *Haight Ashbury Free Clinics, Inc v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550-1551.) However, other courts have disagreed with the *Haight Ashbury* approach and concluded the anti-SLAPP statute's procedures and remedies would only apply to the *subset* of allegations that arise from protected conduct. (See, e.g., *Cho v. Chang* (2013) 219 Cal.App.4th 521, 526-527.) Although it appears the latter approach is more consonant with the anti-SLAPP statute, we need not determine definitively here which approach should be followed because we conclude Shea has not satisfied the first prong even as to the "repudiation" allegation.

10

and therefore the trial court erred in finding the breach of fiduciary duty claim did not arise from protected conduct.

We conclude the trial court correctly found the breach of fiduciary duty claim did not arise from protected conduct, and we therefore reject Shea's claim of error. First, the principal thrust or gravamen of the claim contained in the FAC is that Shea breached its fiduciary duties to Association, and a necessary predicate to the claim is that Shea owed fiduciary duties to Association that could have been breached. Because it appears Shea could only have *owed* such duties while it controlled the Board (cf. *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 646 [fiduciary obligations of real estate agent terminate at end of agency]), and the FAC alleges Shea remained in control of the Board and owed fiduciary obligations to the Association until mid-2006, any claim for breach of such duties necessarily arose from conduct occurring well before the present litigation commenced.[6]

Second, Shea's argument—that the "repudiation" allegation necessarily rests on protected statements made during the instant litigation and therefore the anti-SLAPP law was triggered—hinges entirely on the fact the FAC chose to employ the term

_____

[6]    Shea, arguing on appeal against this construction of the FAC, asserts (1) such construction would mean plaintiffs' claims were time-barred because the complaint was not filed until more than four years after mid-2006, and (2) the FAC alleges Association became entitled to automatic transfer of the Telecommunications Easement on the "Last Close of Escrow," sometime between 2008 and 2011. Although these assertions may reveal arguable deficiencies in the substance or viability of the breach of fiduciary duty claims, the office of the anti-SLAPP statute is not to preempt litigation over *all* unmeritorious lawsuits, but only to preempt litigation over unmeritorious lawsuits *arising from* protected conduct. (See, e.g., *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443-445.)

11

"repudiation" as one of the specifications of how Shea allegedly breached the fiduciary obligations it owed while in control of the Board, and Shea's gloss on the FAC that the term "repudiation" was used in its technical rather than colloquial sense. Certainly, the term "repudiation" has special significance in the arena of contract law: a contract ordinarily cannot be breached before the time for performance has arrived, but there can be a breach of contract "by 'anticipatory repudiation,' usually called *anticipatory breach*." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 861, p. 948; accord, *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 514.) The consequences of an anticipatory repudiation is to give the injured party the right to elect either to sue immediately for breach of the contract without performing or tendering performance of his or her own obligations (*Central Valley General Hospital v. Smith, supra*) or to wait until the performance is due and to then exercise his or her remedies for actual breach of the contract. (1 Witkin, *supra,* § 862, at pp. 949-950.) Although Shea cites cases correctly holding an anticipatory breach requires either an unequivocal statement by the promisor of his or her refusal or inability to perform the contract (such as *Karson Industries, Inc. v. Superior Court* (1969) 273 Cal.App.2d 7, 9) or actions by the promisor making it impossible for him or her to perform the contract (such as *Taylor v. Johnston* (1975) 15 Cal.3d 130, 139-140), Shea cites no law suggesting the rules developed in contract law for anticipatory breach have any application or relevance to a claim for breach of fiduciary duty as asserted by plaintiffs here. Shea's efforts to invoke the anti-SLAPP statute, premised on the argument that Shea's only "unequivocal statement" of its refusal to perform were its statements during the present litigation, is

12

based on the importation of contract law concepts that have no apparent application to the pleaded claims.

Moreover, even to the extent we might construe the FAC's description of Shea's "repudiated" obligation (i.e. the automatic transfer of the Contract to Association as required by the CC&R's) as pleading some form of violation of Shea's contractual obligations, the terminology of "repudiation" would still have no significance because the FAC alleged the time for performance had already passed. (See, e.g., *Gold Min. & Water Co. v. Swinerton* (1943) 23 Cal.2d 19, 29 ["By its very name an essential element of a true anticipatory breach of a contract is that the repudiation by the promisor occur before his performance is due under the contract."]; accord, *Central Valley General Hospital v. Smith, supra,* 162 Cal.App.4th at p. 514.) The fact Shea may have engaged in protected conduct when it reiterated its refusal at a later date does not convert a claim seeking recovery on a fully accrued cause of action for Shea's earlier alleged misfeasance into a claim "arising from" such later protected conduct. (See, e.g., *Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1161 ["What the allegations of the complaint in this case . . . make clear is that defendants' alleged liability arises from defendants' purported failure to provide information to the shareholders that would have revealed their alleged conflict of interest, their alleged misrepresentations and/or omissions regarding the Hospital's offer, and their ending negotiations with the Hospital purportedly for their own self-interest. The complaint does not allege that defendants' filing of the Hospital lawsuit gives rise to any additional liability, but that the lawsuit evidenced defendants' termination of negotiations. [¶] . . . [¶] . . . The allegations regarding the filing of the Hospital lawsuit

13

are only incidental to plaintiffs' claim that defendants breached their fiduciary duty by putting their own interests ahead of the interests of the shareholders. Thus, the trial court properly found that those allegations do not support defendants' motion to strike under section 425.16."].)

Shea contends this case is controlled by *Navellier, supra,* 29 Cal.4th 82, arguing *Navellier* held that when the repudiation of an obligation is communicated during litigation, a cause of action based on that repudiation is subject to the anti-SLAPP statute. Shea's contention is based on an overly broad reading of *Navellier* that, we conclude, demonstrates why Shea's effort to bring this case within *Navellier's* analysis is misplaced. In *Navellier*, the plaintiffs had sued the defendant (Sletten) in a federal court action alleging Sletten had breached a fiduciary duty by, among other things, terminating plaintiffs' contract to provide investment advisory services. A few months after plaintiffs filed the federal action, Sletten entered into an agreement with plaintiffs that effectively rehired plaintiffs as investment advisers and, as part of that agreement, signed a general release that released all claims against plaintiffs except for indemnity and contribution (*id*. at pp. 85-86), but the underlying federal action by plaintiffs was not dismissed as part of the agreement. Instead, plaintiffs filed an amended complaint, and Sletten responded by alleging a number of counterclaims that included two claims the federal court (after rejecting Sletten's argument that the release was voidable as unconscionable and as the product of economic coercion) held were barred by the general release. (*Id*. at pp. 86-87.) Plaintiffs then filed the state court action against Sletten asserting claims for breach of contract (asserting he breached the release by filing the federal counterclaims) and

14

fraud (alleging he had misrepresented his intention to be bound by the release), and

Sletten then filed the anti-SLAPP motion seeking dismissal of plaintiffs' state court

action.  (*Id*. at p. 87.)

The *Navellier* court found the first prong of the anti-SLAPP statute was satisfied

because plaintiff's claims for breach of contract and fraud "arose from" protected

activities, reasoning:

> "Examination of the relevant documents reveals that each of
> Sletten's acts (or omissions) about which plaintiffs complain falls
> squarely within the plain language of the anti-SLAPP statute.  In
> alleging fraud, . . . plaintiffs complain about Sletten's alleged
> negotiation, execution, and repudiation of the Release. . . .  Sletten's
> negotiation and execution of the Release, therefore, involved
> 'statement[s] or writing[s] made in connection with an issue under
> consideration or review by a . . . judicial body' (§ 425.16, subd.
> (e)(2)), i.e., the federal district court, and his arguments respecting
> the Release's validity were 'statement[s] or writing[s] made before a
> . . . judicial proceeding' (*id.*, subd. (e)(1)), i.e., the federal action.
>
> "In alleging breach of contract, plaintiffs complain about Sletten's
> having filed counterclaims in the federal action.  Sletten, plaintiffs
> argue, 'counterclaimed for damages to recover money for the very
> claim he had agreed to release a year earlier' and 'was sued for that
> act.'  A claim for relief filed in federal district court indisputably is a
> 'statement or writing made before a . . . judicial proceeding'
> (§ 425.16, subd. (e)(1)).
>
> "The record thus establishes . . . that [plaintiffs' state court] action is
> based on acts Sletten took 'in furtherance of [his] right of petition or
> free speech under the United States or California Constitution in
> connection with a public issue' (§ 425.16, subd. (b)(1)), as that
> phrase is defined in the anti-SLAPP statute (see *id.*, subd. (e)). . . .
> Sletten is being sued because of the affirmative counterclaims he
> filed in federal court.  In fact, but for the federal lawsuit and Sletten's
> alleged actions taken in connection with that litigation, plaintiffs'
> present claims would have no basis.  This action therefore falls
> squarely within the ambit of the anti-SLAPP statute's 'arising from'
> prong."  (*Navellier, supra,* 29 Cal.4th at p. 90.)

15

The decision in *Navellier* concluded the anti-SLAPP statute applied because the genesis of the underlying obligation was in furtherance of litigation activities (the negotiation and execution of a release of litigated claims) and the alleged breach was premised exclusively on actions taken in furtherance of litigation activities because, "but for the federal lawsuit and Sletten's alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis." (*Navellier, supra,* 29 Cal.4th at p. 90.) In contrast, here the genesis of the underlying obligation sued on by plaintiffs was the fiduciary obligations that arose and were allegedly breached *before* any litigation activities were undertaken (see *Moore v Shaw* (2004) 116 Cal.App.4th 182, 197 [anti-SLAPP statute inapplicable where alleged misconduct occurred years before litigation initiated]), rendering *Navellier* inapposite.

B. The "Probable Success" Prong

Because Shea has not carried its burden of showing the claims asserted by plaintiffs arose from protected activity, we need not and do not reach the secondary inquiry of whether plaintiffs satisfied the burden of showing probable success on the merits. (*Moore v Shaw, supra,* 116 Cal.App.4th at p. 197; *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1275.)

C. Conclusion

We conclude the trial court correctly found Shea had not satisfied its initial burden of showing plaintiffs' claims arose from protected activity and therefore correctly denied Shea's motion to strike the complaint under the anti-SLAPP law.

16

DISPOSITION

The order is affirmed. Plaintiffs are entitled to costs on appeal.


McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


HALLER, J.

Filed 3/19/15

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TRILOGY AT GLEN IVY MAINTENANCE ASSOCIATION et al., | D066483 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. RIC10025131) |
| SHEA HOMES, INC. et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Appellants. | |

THE COURT:

The opinion filed March 4, 2015, is ordered certified for publication.

NARES, Acting P. J.

Copies to: All parties