Filed 9/28/16  Sacks v. Suer CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TERRI MICHELLE SACKS, | |
| Plaintiff and Respondent, | G051894 |
| v. | (Super. Ct. No. 30-2013-00660843) |
| STEPHEN FLOYD SUER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

Law Office of Michael C. Olson, Michael C. Olson and Nancy E. Raney, for Defendant and Appellant.

Soloman Ward Seidenwurm & Smith, Norman L. Smith and Thomas F. Landers, for Plaintiff and Respondent.

\*          \*          \*

Defendant Stephen Floyd Suer appeals from an order denying his motion to strike two causes of action in plaintiff Terri Michelle Sacks's first amended complaint. The amended complaint sought damages for SFS Constructors and Builders, Inc.'s (SFS) allegedly defective work in building a home Sacks subsequently purchased. The two counts at issue allege Suer is personally liable for SFS's defective work under an alter ego theory, based in part on his filing a cross-complaint for contribution and indemnity against subcontractors. Suer contends the amended complaint's reliance on his filing the cross-complaint renders the action against him a strategic lawsuit against public participation (SLAPP). (Code Civ. Proc., § 425.16; all further statutory references are to this code unless otherwise indicated.) The trial court disagreed denying his anti-SLAPP motion.

We affirm the trial court's order. The gravamen of the two causes of action is Sacks's claim for damages to repair the allegedly defective work of improvement. Thus, the reference to Suer's cross-complaint against the subcontractors is merely incidental to the main thrust of those two counts.

## FACTS AND PROCEDURAL HISTORY

Sacks's original complaint alleged she purchased a home from Martin and Nicole Hennessy. According to the complaint, SFS and Suer completed construction of the home for the Hennessys. After buying the home, Sacks discovered numerous problems relating to water intrusion, drainage, mold, grading, the roof, and the foundation.

The bulk of the complaint's eight causes of action sought recovery against the Hennessys. However, Sacks also sued SFS and Suer for damages in two counts; the sixth cause of action, brought under the Right to Repair Act (Civ. Code, § 895 et seq.), and the seventh cause of action for negligence. Sacks alleged "one or both of [SFS and Suer] was the general contractor who constructed the Property," and the home's defects resulted from the failure to properly build it. Suer and SFS jointly answered the

2

complaint and also filed a cross-complaint against several subcontractors for contribution and indemnity.

After Suer moved for summary judgment, claiming "he never, in his personal or individual capacity, entered into a contract with nor performed any construction work for the Hennessys," Sacks was granted permission to file a first amended complaint. It contained the same causes of action as the original pleading. However, the amended complaint's sixth and seventh causes of action asserted "SFS was the general contractor who constructed" the Hennessys's home, "SFS and Suer are alter egos" of each other, and Suer is liable for the defective work in that capacity. Several factors were alleged in support of the alter ego theory, one of which was Suer's filing the cross-complaint against subcontractors and that he admitted "to being personally involved in work on the Property."

Suer demurred to the amended complaint. He argued its allegations "fall[] far short of sufficient to entitle [Sacks] to alter ego liability" against him. The trial court overruled the demurrer, in part, relying on the allegation Suer "has directly sued sub[]contractors seeking indemnity . . . while at the same time disclaiming any responsibility for the work performed by . . . SFS" to support the ruling.

Then Suer filed his anti-SLAPP motion. He argued the amended complaint was "unquestionably based on [his] privileged act . . . of suing the subcontractors." The trial court denied the motion, concluding Suer failed to carry his burden of establishing Sacks's action against him arose from protected activity. This appeal followed.

**DISCUSSION**

Under section 425.16, subdivision (b)(1), a cause of action against a person arising from an act in furtherance of a constitutionally protected right of free speech or petition may be stricken unless the plaintiff establishes the probability of prevailing on the claim. The statute "requires [a] court to engage in a two-step process: First, the court decides whether the defendant has made a threshold showing that the challenged cause of

3

action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) On appeal, the trial court's ruling is subject to de novo review. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.)

The trial court denied Suer's motion, finding he failed to carry his burden of showing Sacks's action against him arose from protected activity. Thus, the focus of this appeal is on the anti-SLAPP motion's first prong.

Suer argues that to support the application of the alter ego doctrine in this case, the amended complaint's allegation he filed a cross-complaint against the subcontractors was essential to establish the element of injustice flowing from a recognition of SFS's separate corporate identity. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538.) Thus, he contends the gravamen of Sacks's alter ego claim, i.e., his filing a lawsuit, constitutes both protected activity and is privileged under Civil Code section 47.

We conclude Suer's argument lacks merit. Section 425.16 applies to "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . ." (§ 425.16, subd. (b)(1).) The Supreme Court has recognized "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

The amended complaint's causes of action against SFS and Suer seek damages for the allegedly defective work in remodeling the home Sacks purchased from the Hennessys. The sixth and seventh causes of action alleged SFS failed to properly

4

build the home. Suer is alleged to be liable for the defective work on the basis SFS is his alter ego.

Sacks's amended complaint alleged several factors in support of her alter ego theory. She asserted Suer "incorporated SFS," the corporation "is wholly owned by [him]" and he "is [its] only officer." Suer and SFS operate under the same fictitious business name "Laguna Construction & Builder," use "the same address" for business purposes, and "have the same contact information." According to Sacks, SFS is also "inadequately capitalized" because Suer allegedly "procur[ed] an insurance policy that excludes coverage for SFS' defective construction, even though [in this case] SFS self-performed much of the construction work." Further, in addition to the allegation Suer personally sued the subcontractors, Sacks alleges Suer "has admitted . . . that he and SFS were both retained to perform work on the Property," and he was "personally involved" in the project. Finally, Sacks alleges Suer "maintains a personal contractor's license . . . which could be used to continue operations under a different corporate entity if SFS were to face a large monetary judgment."

Sacks's assertion Suer is liable for SFS's allegedly defective work on an alter ego theory does not constitute a cause of action as that phrase is used in section 425.16. To qualify under section 425.16, "[t]he targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 395.) "A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice." (*Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1359.)

5

Further, merely because one factor supporting the alter ego allegation was Suer's cross-complaint against the subcontractors, it did not transform the claims asserted against Suer into a SLAPP action. "[T]he critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) "If the mention of protected activity is 'only incidental to a cause of action based essentially on nonprotected activity,' then the anti-SLAPP statute does not apply." (*Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 272; *Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 394 ["Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16"].) While the anti-SLAPP statute is construed "'broadly to protect'" a party's speech and petitioning rights (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at p. 75), "[t]he fact [a party] may have engaged in protected conduct . . . at a later date does not convert a claim seeking recovery on a fully accrued cause of action . . . into a claim 'arising from' such later protected conduct." (*Trilogy at Glen Ivy Maintenance Assn. v. Shea Homes, Inc.* (2015) 235 Cal.App.4th 361, 370.)

Suer attempts to avoid the foregoing result by arguing "[a]lter ego must be more than a 'remedy' in the sense of relief sought, because summary judgment/summary adjudication motions and demurrers are proper procedural means to address alter ego claims." His argument ignores the different purposes of these procedures. "A demurrer tests the pleading alone, and not the evidence or the facts alleged," and "will be sustained only where the pleading is defective on its face." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459.) Likewise, cases have recognized that a summary judgment motion "has been held to necessarily include a test of the sufficiency of the complaint and is treated, in effect, as a motion for judgment on the pleadings." (*Denton v. City of Fullerton* (1991) 233 Cal.App.3d 1636, 1640.) But "[t]he purpose of the [anti-SLAPP] statute is to dismiss meritless lawsuits designed to

6

chill the defendant's free speech rights at the earliest stage of the case." (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 209.)

Thus, a defendant can employ a demurrer or summary judgment motion to challenge the sufficiency of a pleading's allegations. But at least on the first prong of the anti-SLAPP analysis under section 425.16, the issue is "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 88.) For this reason, the purpose of an anti-SLAPP motion is distinguishable from that of a demurrer or a summary judgment motion.

Suer's reliance on the Supreme Court's recent decision in *Baral v. Schnitt, supra*, 1 Cal.5th 376 also does not support his case. *Baral* involved an issue relevant to the second prong of the anti-SLAPP analysis; the application of section 425.16 to a mixed cause of action. (*Baral*, at p. 381.) To the extent *Baral's* discussion is relevant to a case resolved on the first prong, it reaffirmed the court's prior decisions concerning what constitutes a cause of action arising from protected activity and the corollary principle that incidental or collateral allegations of protected activity are not subject to being attacked by an anti-SLAPP motion. (*Id.* at pp. 393, 394-395.)

Because Suer failed to carry his burden of showing Sacks's alter ego allegations constitute a cause of action or arose from protected activity, it is unnecessary to determine whether Sacks can establish a probability of prevailing under the second prong of the anti-SLAPP analysis.

**DISPOSITION**

The order denying Suer's motion to strike the sixth and seventh causes of the first amended complaint is affirmed. Sacks shall recover her costs on appeal.


THOMPSON, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.

8