Filed 6/29/26 Truck Ins. Exchange v. Martinez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| TRUCK INSURANCE EXCHANGE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ERNESTO MARTINEZ, <br><br> Defendant and Respondent. | B344973 <br><br> (Los Angeles County Super. Ct. No.22NWCV01386) |

APPEAL from an order of the Superior Court of Los Angeles County, Lee W. Tsao, Judge. Affirmed.

Berger Kahn, David B. Ezra and Heather C. Whitmore for Plaintiffs and Appellants.

Callahan & Blaine, Edward Susolik and Sharon T. Yuen for Defendant and Respondent.

_____

Appellants Fire Insurance Exchange and Truck Insurance Exchange (collectively the insurers) provided a defense and paid a settlement on behalf of respondent insured Ernesto Martinez in a wrongful eviction lawsuit.  When the insurers filed the instant action for reimbursement, Martinez filed a cross-complaint alleging that the insurers engaged in bad faith insurance claims handling practices during the underlying lawsuit.  The insurers filed a special motion to strike the cross-complaint under Code of Civil Procedure section 425.15 (the anti-SLAPP statute), which the trial court denied.[1]  On appeal, the insurers contend all of the claims alleged in the cross-complaint are based on protected petitioning activity because any damages that Martinez incurred are solely related to the insurers' filing of the reimbursement action.  We conclude the cross-claims for breach of contract and breach of the covenant of good faith and fair dealing arise from alleged bad faith claims handling conduct, which is not protected activity under the anti-SLAPP statute and is actionable even if Martinez suffered only nominal damages.  Martinez's damages are not predicated solely on the insurers' filing of a reimbursement action.  Therefore, we affirm.

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation."  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)  All further statutory references are to the Code of Civil Procedure unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Allegations of the Complaint

On November 21, 2022, the insurers filed an action against Martinez for reimbursement, alleging the following facts. Martinez owned a four-unit apartment building in Los Angeles, California. Fire Insurance Exchange issued a landlord liability policy for the property. The landlord policy did not cover liabilities arising from the intentional acts of an insured person when the results were reasonably foreseeable. Truck Insurance Exchange issued a personal umbrella policy to Martinez. The umbrella policy excluded damages that were either expected or intended by an insured. Both policies excluded coverage for punitive damages.

In May 2016, Martinez filed a Declaration of Intent to Evict for Landlord Occupancy with the City of Los Angeles declaring that his parents were going to live in one of the units. The tenant renting the unit filed a complaint against Martinez for violation of the Unruh Civil Rights Act (Civ. Code, § 51 et al.), trespass, invasion of privacy, fraudulent eviction, and wrongful eviction. The tenant alleged Martinez's parents were not actually going to live in the unit as required for a lawful eviction. Martinez tendered the lawsuit to the insurers for defense and indemnification, who agreed to defend him under a reservation of rights. The insurers advised Martinez that they intended to settle the case by paying $700,000 to the tenant, for which they intended to seek reimbursement from Martinez. Martinez refused to reimburse the insurers.

## B.    Allegations of the Cross-Complaint

On May 29, 2024, Martinez filed a cross-complaint against the insurers for breach of contract and breach of the implied covenant of good faith and fair dealing based on the following allegations.  The insurers appointed counsel at the law firm of Hartsuyker, Stratman & Williams-Abrego to defend Martinez and protect their own interests in the underlying wrongful eviction action.  Martinez was not aware of his right to independent counsel.  Defense counsel advised Martinez that the firm represented only his interests and advised him against obtaining independent counsel.

The insurers subsequently appointed counsel at the law firm Lewis Brisbois Bisgaard & Smith, LLP (the Lewis firm) to defend Martinez.  The Lewis firm sent a case evaluation letter to Marcie Mendes, who was the adjuster for the insurers assigned to Martinez's claim.  In the letter, which was not sent to Martinez, the Lewis firm described him in extremely unfavorable terms, questioning his statements and his credibility.  Mendes, on behalf of the insurers, retained the law firm Berger Kahn as coverage counsel to protect the insurers' interest in seeking reimbursement from Martinez for damages paid in the underlying action.

In September 2020, Berger Kahn introduced itself as coverage counsel to the Lewis firm.  In October 2020, Mendes also advised the Lewis firm that there were coverage issues in the case and requested inclusion of Berger Kahn in a mediation.  Upon receiving notice that the insurers had coverage counsel, the Lewis firm was required to disclose the conflict of interest to

4

Martinez and obtain his written consent, or withdraw as defense counsel and advise Martinez to obtain independent Cumis counsel. The Lewis firm did neither, but instead, sent an updated evaluation report to Mendes, which was not communicated to Martinez.

Mendes, on behalf of the insurers, conducted several meetings with both the Lewis firm and Berger Kahn to discuss the underlying action and to obtain information to support coverage defenses against Martinez. Martinez was not aware of any of the meetings.

After a mediation in December 2020, and receipt of a settlement proposal of $700,000, Berger Kahn notified Martinez that he had two options: accept the settlement offer and be subject to a reimbursement action, or take over his own defense and pay for his defense fees and costs himself. Martinez had been led to believe the Lewis firm and the prior insurance defense counsel represented his interests in the underlying action and coverage issues, but it became clear that the Lewis firm represented solely the insurers' interests. Martinez demanded independent counsel, but the insurers refused to pay a reasonable hourly rate necessary to obtain an attorney.

In March 2021, Berger Kahn, on behalf of the insurers, threatened to file a reimbursement action unless Martinez contributed $332,000 toward the settlement amount, which Martinez did not agree to pay.

Even after Berger Kahn filed the instant reimbursement action against Martinez on behalf of the insurers, the firm continued to communicate directly with Martinez and coerced him to sign a confidentiality agreement and financial disclosure form under the pretense that the information would allow for a

5

five-figure settlement.  Based on this understanding, Martinez produced financial records, tax returns, loan information and property values to the insurers.  In May 2023, it became clear that the insurers took advantage of Martinez's financial information to facilitate a settlement against him and significantly increase their settlement demand in the reimbursement action.

With respect to the cause of action for breach of contract, the insurers breached the policies by:  (1) refusing to appoint *Cumis* counsel to provide a complete defense to Martinez in the underlying action; (2) failing to conduct a fair and thorough investigation of coverage for the claim; and (3) withholding benefits due under the policy.  As a result, Martinez had been damaged in an amount in excess of $250,000.

The cause of action for breach of the implied covenant of good faith and fair dealing alleged the insurers' acts were contrary to established claims practices and legal requirements, inconsistent with Martinez's reasonable expectations, and constituted bad faith.  The insurers refused to appoint independent counsel, although they knew a conflict of interest had arisen based on their reservation of rights.  Instead, the insurers continued working in concert with their coverage counsel to protect the insurers' interests alone.  The insurers further breached the covenant of good faith and fair dealing by: (1) refusing to provide a complete defense in the underlying action by misrepresenting his right to *Cumis* counsel and refusing to appoint *Cumis* counsel; (2) misrepresenting the coverage of the policies; (3) threatening and coercing Martinez to provide information, which they used to increase their own settlement demand; (4) failing to obtain Martinez's written

6

consent to allow defense counsel to continue representing him after a clear conflict of interest emerged; (5) misrepresenting his potential liability in the reimbursement action to force him to agree to a significant settlement; (6) refusing to give a reasonable interpretation to the policies' coverage provisions or Martinez's reasonable expectation of coverage and acting to protect their own financial interests at the expense of his rights; (7) failing to acknowledge and act reasonably promptly in communications with Martinez; (8) violating California's administrative regulations governing claims settlement practices in adjustment of Martinez's claim; (9) giving greater consideration to its own interests that to Martinez's interests; (10) failing to provide Martinez with a reasonably justifiable basis for its pursuit of reimbursement of amounts paid under the policies under the policy language, the facts, or the applicable law; and (11) compelling Martinez to engage legal counsel to defend himself and to preserve benefits owed under the policies.

As damages, Martinez sought all of the attorney fees that he incurred and continued to incur to keep the policy benefits that the insurers sought reimbursement for in bad faith. In addition, the insurers' conduct was despicable, conducted with a conscious disregard of Martinez's rights, constituting oppression, fraud, and/or malice, for which he sought punitive damages.

## C. Anti-SLAPP Motion

On July 25, 2024, the insurers filed an anti-SLAPP motion seeking to strike the entire complaint. They asserted that courts consider the principal thrust or gravamen of a cause of action to determine whether a claim arises from protected activity. They

7

argued that all of the allegations in the cross-complaint arose from the insurers' exercise of their right to petition the court for reimbursement, which is a protected activity under the anti-SLAPP statute. They further argued under the second prong of the anti-SLAPP analysis, Martinez could not show his claims had the requisite minimal merit to succeed.

In support of the anti-SLAPP motion, the insurers filed a declaration by Mendes. Mendes declared that Martinez was provided at least five opportunities to retain independent counsel. She attached two letters provided by the Lewis firm assessing potential liability and damages. Fire Insurance Exchange paid $300,000 and Truck Insurance Exchange paid $400,000 to secure Martinez's release from the underlying wrongful eviction action.

They also filed a declaration by Berger Kahn attorney Heather Whitmore. Whitmore declared that her office issued a supplemental reservation of rights letter to Martinez in June 2020, which offered him an opportunity to select his own attorney pursuant to Civil Code section 2860, but Martinez did not request independent counsel. In February 2021, her office informed Martinez that if the insurers and the tenant accepted the proposed settlement, the insurers would fund the settlement of $700,000 subject to a reservation of rights to seek reimbursement of the full amount from him.

In March 2021, Whitmore's office wrote a substantially similar letter to Martinez confirming that they were accepting the settlement proposal. Berger Kahn informed Martinez that if he did not think the settlement amount was reasonable, or if he objecting to the insurers settling the case, he was free to assume to all responsibility for mounting and funding his own defense

from that point forward.  The insurers also made a settlement proposal that would require Martinez to personally pay $332,000 of the settlement amount in exchange for mutual waivers and no reimbursement litigation.  Martinez confirmed acceptance of the $700,000 settlement proposal.

The insurers also submitted a compendium of evidence and a request for judicial notice.

## D.    Opposition to Anti-SLAPP Motion

Martinez filed an opposition on the ground that bad faith actions are not subject to anti-SLAPP motions.  Moreover, the insurers' filing of a lawsuit for reimbursement was not the basis of either cause of action alleged in the cross-complaint.  The cross-complaint alleged specific instances where the insurers breached the contract and acted in bad faith by failing to provide Martinez with a complete defense, while unfairly and in bad faith acting in concert with appointed defense counsel to obtain evidence to support the insurers' coverage defenses.  Lastly, Martinez could show his claims had the requisite minimal merit under the anti-SLAPP statute.

In support of his opposition, Martinez filed his own declaration.  Martinez believed the Lewis firm and Berger Kahn represented his interests.  He did not know of or participate in any of the discussions held between the adjuster, the Lewis firm, and Berger Kahn.  He also did not receive any analysis reports prepared by the Lewis firm related to Martinez's defense in the underlying wrongful eviction action.  In March 2021, he received a threat from the Berger Kahn firm on behalf of the insurers to coerce him to pay $332,000 from his personal assets toward the

9

settlement of the underlying case. He was told the deadline to respond to the settlement demand was three days later.

After the mediation, Martinez became aware that the Lewis firm was working to protect solely the insurers' interests. No one working for the insurers or the Lewis firm advised him about a conflict of interest, and he never signed any waiver of a conflict of interest. He never waived his right to independent counsel. Once he understood that the Lewis and Berger Kahn firms represented the insurers in March 2021, he requested independent counsel pursuant to Civil Code section 2860. He located independent counsel to represent him, but the insurers offered an unreasonably low hourly rate of $210 per hour for attorneys. Martinez could not afford to pay the difference, so he was unable to obtain independent counsel. Martinez did not understand, nor did anyone explain, that he had a statutory right to arbitrate the hourly rates agreed on by the insurers. Given the short time frame to respond to the settlement offer and the unreasonably low hourly rate offered by the insurers, Martinez did not have time to obtain independent counsel.

Martinez allowed the insurers to accept the settlement in the underlying action because he did not have funds to immediately take over his own defense and could not financially contribute the amount demanded by the insurers to avoid a reimbursement action.

Before March 2021, he was not aware of, and did not understand, his right to independent counsel. Although the insurers and the Berger Kahn firm provided letters written to Martinez in December 2018, August 2019, and June 2020, Martinez does not believe he received those letters at the time that they were written. He received the August 2019 and June

2020 letters with an email from Berger Kahn in March 2021, but did not recollect seeing the letters before March 2021.

## E.     Reply, Hearing, and Trial Court Ruling

The insurers filed a reply arguing that the cross-complaint did not factually allege any valid cause of action, and at most, asserted a defense to the reimbursement complaint.  They also argued that all of the communicative acts performed by attorneys in their representation of a client in a judicial proceeding or other petitioning context were protected petitioning activity under the anti-SLAPP statute.

A hearing was held on the anti-SLAPP motion on January 17, 2025.  The insurers argued that the cross-complaint contained conclusory allegations that were not supported by the evidence.  For example, the complaint alleged the insurers refused and thwarted Martinez's efforts to obtain independent counsel, but the evidence showed the insurers offered him independent counsel several times.  No evidence showed the insurers told him that he could not have independent counsel.  Even if the allegation were true, Martinez had not sustained any damages because he had not paid any attorney fees.  The insurers believed the cross-complaint was based on protected petitioning activity because all of the damages that Martinez claimed he sustained, or would sustain, resulted from the insurers filing a reimbursement action.

The insurers noted that the cross-complaint alleged that they misrepresented the coverages under the policy, but they argued there was no evidence of a misrepresentation, such as what was said, who said it, or how Martinez was damaged by the

11

misrepresentation. The insurers also noted the cross-complaint alleged they obtained information from Martinez through threats and coercion, which they used to increase their own settlement demand. They argued this allegation was related to the reimbursement lawsuit and constituted protected settlement communications under the anti-SLAPP statute. The insurers argued that every allegation of the cross-complaint was intertwined with their protected activity of filing the reimbursement action.

The court explained that while the insurers' factual arguments might ultimately succeed, an anti-SLAPP motion was not the proper vehicle to make those arguments. As the case law made clear, the allegations were not based on protected activity. The insurers' arguments would be more appropriately addressed through a different type of motion that could address the merits.

The same day, the trial court issued an order denying the anti-SLAPP motion. The court listed various acts alleged in the cross-complaint as the basis for each cause of action. Based on these allegations, the court concluded the causes of action in the cross-complaint arose from the manner in which the insurers investigated and defended the claims against Martinez in the underlying wrongful eviction lawsuit, not their act of petitioning the court for reimbursement in the instant case. The court noted that the mere fact Martinez's causes of action were alleged in a cross-complaint did not mean they arose from the insurers' decision to seek reimbursement. Because the insurers did not meet their initial burden to show the cross-complaint was based on protected conduct, the burden did not shift to Martinez to establish a probability of success on his claims. The insurers filed a timely notice of appeal from the order.

## DISCUSSION

On appeal, the insurers contend:  damages are an element of each claim in the cross-complaint, Martinez's alleged damages are based entirely on legal fees and costs incurred in connection with the reimbursement action, and therefore, each claim is based on the insurers' protected activity.  We conclude the insurers' analysis is incorrect.

### A.    Statutory Scheme and Standard of Review

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.)  To accomplish this purpose, the statute authorizes a special motion to strike a claim against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

Under section 425.16, subdivision (e), an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2)

13

any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Courts apply a two-step analysis to evaluate anti-SLAPP motions. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011 (*Bonni*).) In the first step, the court determines whether the plaintiff's claims arise from protected activity. (*Id.* at p. 1009.) "If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) However, "[i]f the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity, the court properly denies the motion to strike without addressing the second step (probability of success). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80−81; *Trilogy at Glen Ivy Maintenance Assn. v. Shea Homes, Inc.* (2015) 235 Cal.App.4th 361, 367.)" (*C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 698.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063 (*Park*).) In the first step, the moving party's burden is "to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category

14

of protected activity." (*Bonni, supra*, 11 Cal.5th at p. 1009.)  " 'A "claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." ' (*Wilson v. Cable News Network*, [*supra*, 7 Cal.5th at p. 884]; accord, *Park*, at p. 1060.)  ' "[T]he mere fact that an action [or claim] was filed after protected activity took place does not mean the action [or claim] arose from that activity for the purposes of the anti-SLAPP statute." ' (*Park*, at pp. 1062–1063; see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 ['a claim does not "arise from" protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim'].)  'To determine whether a claim arises from protected activity, courts must "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." ' (*Wilson* [*v. Cable News Network, supra*, 7 Cal.5th] at p. 884; accord, *Park*, at p. 1063.)" (*Mooradian, supra*, 43 Cal.App.5th at p. 698.)

A count, as pled in the complaint, may contain allegations of both protected and unprotected activity, loosely referred to as a "mixed cause of action." (*Baral, supra*, 1 Cal.5th at p. 382.)  An anti-SLAPP motion can reach a claim based on protected activity regardless of how the pleading is organized (*id.* at p. 392), but if a single count encompasses multiple claims, the moving party must identify the claims arising from protected activity to be stricken (*Bonni, supra*, 11 Cal.5th at p. 1011).  When a party moves to strike an entire complaint, rather than identifying specific claims for relief asserted to arise from protected activity, and the complaint presents at least one claim for relief that is not based

15

on protected activity, the anti-SLAPP motion will be denied. (*Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1107−1108.) Similarly, if an anti-SLAPP motion is directed at a cause of action that encompasses multiple claims, but the moving party fails to identify how the speech or conduct underlying some of the claims is protected activity, the anti-SLAPP motion will be denied as to those claims. (*Bonni*, *supra*, 11 Cal.5th at p. 1011.)

The California Supreme Court has expressly rejected a "gravamen test" to determine the primary focus of a mixed cause of action that encompasses multiple claims. (*Bonni*, *supra*, 11 Cal.5th at pp. 1009−1012.) A court may still consider the "gravamen" of a claim, however, to evaluate whether a particular act or series of acts alleged within a cause of action supplies the elements of a claim or simply provide incidental context. (*Ibid.* at p. 1012.)

On appeal, we review an order granting or denying an anti-SLAPP motion de novo. (*Park*, *supra*, 2 Cal.5th at p. 1067.) "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid.*) Considering the pleadings and the affidavits concerning the facts, we accept the plaintiffs' submissions as true "and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Ibid.*)

16

**B. Law Applicable to Breach of Insurance Contract, Including Breach of Covenant of Good Faith and Fair Dealing**

The "elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse of nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

"The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing. 'The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits. To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests.' " (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720.)

"Although a breach of the implied covenant of good faith and fair dealing is 'necessarily a breach of contract,' the scope of conduct prohibited by the 'implied covenant often is pleaded as a separate count.' [Citation.]" (*Miller v. Zurich American Ins. Co.* (2019) 41 Cal.App.5th 247, 257 (*Miller*).)

Violations of the implied covenant include unreasonably withholding benefits under the policy (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1209), denying a claim without fully investigating the grounds for denial (*Wilson v. 21st Century Ins. Co.*, *supra*, 42 Cal.4th at p. 720.), or an unreasonably breach of an insurer's contractual duty to defend its insured (*Miller*, *supra*, 41 Cal.App.5th at p. 257).

17

In *Miller*, the insurance company agreed to defend the plaintiffs in an underlying nuisance action, subject to a reservation of rights, but refused to provide independent counsel. (*Miller*, *supra*, 41 Cal.App.5th at pp. 251–252.)  While the underlying action was pending, the plaintiffs filed an action against the insurance company for breach of contract and breach of the covenant of good faith and fair dealing based on several acts by the insurer, including refusing to pay for independent counsel.  (*Ibid*.)  The appellate court concluded the plaintiffs' claims were based on allegations directly related to the insurance company's duty to defend and denial of the policy benefit of independent legal services, not from specific allegations of communications between counsel, and therefore, the insurance company's anti-SLAPP motion was properly denied.  (*Id*. at pp. 257–258.)

When an insurer tortiously withholds policy benefits, any attorney fees that the policyholder reasonably incurs to obtain benefits due under the policy are recoverable as an element of damages resulting from the tortious conduct.  (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 815.)

Civil Code section 3360 provides:  "When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."  "California courts have applied section 3360 to conclude that '[a] plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him.' [Citation.]  Nominal damages may be properly awarded for the violation of a contractual right because 'failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct

from the actual damages.' [Citation.]" (*Elation Systems, Inc. v. Fenn Bridge LLC* (2021) 71 Cal.App.5th 958, 965–966.)

## C.    Application

In this case, the insurers' anti-SLAPP motion sought to strike the complaint as a whole, rather than identifying specific allegations within a cause of action that they asserted were based on protected activity.  The insurers' contention is that damages are an element of each cause of action, the damages alleged in the complaint necessarily consist solely of attorney fees and costs incurred in connection with the reimbursement action, and therefore, Martinez's claims arise from the insurers' protected petitioning activity.  We disagree.

The cross-complaint alleges multiple acts of bad faith claims handling by the insurers during settlement of the underlying wrongful eviction action against Martinez, before the reimbursement action was ever filed.  These include, for example, failing to provide Martinez with independent counsel.  The cross-complaint does not allege that by filing of a reimbursement action, the insurers breached the policies or the covenant of good faith and fair dealing.

The cross-complaint also alleges that Martinez incurred damages of at least $250,000, as a result of various acts by the insurers, including failing to provide independent counsel prior to completion of the settlement in the underlying wrongful eviction lawsuit.  Even if Martinez cannot show he suffered any actual damages as a result of the alleged breaches, however, he may still recover nominal damages pursuant to Civil Code section 3360. Martinez was required to file a cross-complaint alleging any

19

related cause of action arising out of the same series of transactions or his claims would be considered waived under California's compulsory cross-complaint statute.  (Code Civ. Proc., §§ 426.30, subd. (a), & 426.10, subd. (c).)  The trial court correctly concluded the claims alleged in the cross-complaint do not arise from protected petitioning activity.

## DISPOSITION

The January 17, 2025 order is affirmed.  Respondent Ernesto Martinez is awarded his costs on appeal.

NOT TO BE PUBLISHED.

MOOR, J.

WE CONCUR:

HOFFSTADT, P. J.

BAKER, J.