Filed 11/22/17

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| HOSSEIN SHAHBAZIAN et al., | B271562 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. YC070413) |
| v. | |
| CITY OF RANCHO PALOS VERDES, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Stuart M. Rice, Judge.  Affirmed.

Kutak Rock, Edwin J. Richards, Antoinette P. Hewitt and Christopher D. Glos for Defendant and Appellant.

Callanan, Rogers & Dzida and Joseph S. Dzida for Plaintiffs and Respondents.

————————————————

# INTRODUCTION

Governments speak.  They also petition.  And they act in ways that are neither speaking nor petitioning.  It is important to distinguish between the three, because Code of Civil Procedure section 425.16 (section 425.16) may apply to the first two, but not the third.

This case concerns whether the City of Rancho Palos Verdes properly issued a permit for a fence separating two neighbors.  Hossein and Victoria Shahbazian challenged the permit by suing the City.  The Shahbazians alleged the City violated certain ordinances and selectively applied others in issuing the permit for the fence while denying a permit for a deck the Shahbazians had built.  The City filed a special motion to strike under section 425.16, arguing the Shahbazians' complaint targeted "protected speech" because the City's decisions followed official government proceedings.  The trial court denied the motion, and the City appealed.

We conclude section 425.16 does not protect a governmental entity's decisions to issue or deny permits, and we agree with the trial court that granting a special motion to strike in these circumstances would chill citizens' attempts to challenge government action.  Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Shahbazians Contest Their Neighbors' New Fence*

The Shahbazians live next door to Darrel and Brenda Hesser.[1]  A retaining wall topped by a lattice wood fence originally separated the two properties.  In 2014 the Hessers partially constructed a new fence and allegedly "shaved" the retaining wall without the approval of the Shahbazians or a permit from the City.  (See Rancho Palos Verdes Mun. Code, § 17.76.030.)  The Shahbazians alleged the alterations to the fence and the wall created drainage problems, interfered with their ocean view, and reduced the value of their property.

The Shahbazians complained to the City's community development department, whose code enforcement division initiated an investigation.  After consulting with the planning and zoning division, the code enforcement division concluded the portions of the fence the Hessers had already built complied with the municipal code.  The City issued what it called "an over-the-counter after-the-fact permit" for the "already-built" portion of the fence.[2]

The planning and zoning division concluded the portion of the fence not yet built would comply with the municipal code if modified in certain respects, and it issued a conditional permit

_____

[1]    The Hessers, although defendants in this action, are not parties to this appeal.

[2]    The City subsequently revoked that permit and reissued it after rectifying what the City called an "administrative issue." The Shahbazians argue the scope of the mistake was far more significant, but resolution of that factual dispute is not necessary to this appeal.

3

for that portion of the fence. The Shahbazians appealed that decision to the planning commission. Following a noticed public hearing, the planning commission approved the permit. The Shahbazians appealed that decision to the city council. Following another noticed public hearing, the city council remanded the matter to the planning commission with instructions to consider whether the fence as a whole complied with the municipal code.

Meanwhile, the Shahbazians appealed the "over-the-counter after-the-fact permit" for the portion of the fence the Hessers had already built. Following another noticed public hearing, the planning commission approved the permit with modifications, effectively approving the entire fence. The Shahbazians appealed that decision to the city council, which affirmed the decision of the planning commission. According to the City, the Hessers complied with the required modifications when they completed the fence.

The Shahbazians' complaints about the Hessers' fence apparently prompted the Hessers to complain to the City about a deck the Shahbazians had built without a permit. The City investigated the deck and concluded it did not comply with the municipal code. The City nevertheless conditionally approved a permit pending certain modifications to the deck. The City contends the Shahbazians did not make those modifications, and the City did not issue a final permit for the deck.

### B. *The Shahbazians Sue the City*

The Shahbazians sued the City and the Hessers. The operative first amended complaint alleged causes of action against the City for negligence, inverse condemnation, and selective enforcement. In connection with the cause of action for negligence, the Shahbazians alleged, among other things, the

4

City had a "mandatory duty" to refuse to issue any permit without first giving the Shahbazians prior notice and an "opportunity to be heard." The Shahbazians claimed the City "violated its own ordinances by permitting the Hessers to alter the [fence] without required permits and without prior notice and hearing as required by law." The Shahbazians alleged the City acted unreasonably by failing to require the Hessers to repair damage to the Shahbazians' property before issuing the permit.

In connection with the cause of action for inverse condemnation, the Shahbazians alleged the City was jointly and severally liable with the Hessers because the City "conducted itself . . . to protect itself from suit and liability rather than in the objective performance of its public duties." In connection with the cause of action for selective enforcement, the Shahbazians alleged "the City acted arbitrarily and engaged in illegal selective enforcement by refusing to strictly enforce and follow its own ordinances with respect to the Hessers while having previously and at the same time strictly enforced such ordinances as to the Shahbazians." The Shahbazians alleged that "at least one motive for the City's arbitrary conduct and selective enforcement was the improper and illegal motive of discrimination against persons of Middle Eastern ethnicity and descent."

C.    *The City Files a Special Motion To Strike*

The City demurred and filed a special motion to strike under section 425.16. On the first step of the two-step analysis under section 425.16 (see *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*)), the City argued the Shahbazians' causes of action arose from (1) speech made in connection with an issue under consideration or review by the City; (2) speech made in a place open to the public or a public forum in connection with an issue of

5

public interest; and (3) speech made in furtherance of the exercise of the rights to petition and free speech in connection with a public issue or an issue of public interest.  (See § 425.16, subds. (e)(2)-(e)(4).)  The City argued "all oral or written statements purportedly supporting [the Shahbazians'] causes of action against the City were made in connection with the proceedings of . . . official government bodies."  The City contended the Shahbazians "do not attack the validity of the ordinances themselves, but claim that the oral and written statements and writings finding them (or their neighbor) subject to the ordinances are improper."  On the second step of the section 425.16 analysis, the City argued the Shahbazians could not prevail on the merits because the City could not be liable under a common law theory of negligence, and the Shahbazians failed to state causes of action for breach of a mandatory duty, inverse condemnation, and selective enforcement.

In their opposition to the special motion to strike, the Shahbazians argued their causes of action arose from violations of City ordinances, not protected speech or petitioning activity. The Shahbazians identified alleged violations of several municipal code sections, as well as recorded covenants, conditions, and restrictions governing the properties.  The Shahbazians argued that, to the extent the City engaged in protected speech or conduct in connection with the issuance of a permit to the Hessers, the speech or conduct was merely "incidental to the wrongdoing underlying [their] case."  The Shahbazians also argued they had shown their causes of action had minimal merit, as required by the second step of the section 425.16 analysis.

The trial court denied the special motion to strike, concluding, in connection with the first step, the City failed to

6

show the Shahbazians' causes of action arose from protected speech or activity.  Thus, the trial court did not reach the second step.  (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81 (*City of Cotati*).)  The trial court also sustained the City's demurrer with leave to amend.  The City timely appealed from the order denying its special motion to strike.[3]

## DISCUSSION

A.     *Section 425.16*

"A strategic lawsuit against public participation, or SLAPP suit, is one which 'seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.'"  (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 404 (*Contreras*); see *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 (*Rusheen*).)  "Section 425.16 . . . provides a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights."[4]  (*Contreras*, at p. 404; see *Rusheen*, at p. 1055.)  "The

---

[3]    An order denying a special motion to strike under section 425.16 is appealable.  (Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13); *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 681, fn. 5.)  An order sustaining a demurrer with leave to amend is not.  (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 1000.)

[4]    Section 425.16, subdivision (b)(1), provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion

7

statute 'authorizes a defendant to file a special motion to strike any cause of action arising from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue.'" (*Contreras*, at p. 404; see *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1546-1547.)

In ruling on a motion under section 425.16, the trial court engages in a two-step process: "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral, supra*, 1 Cal.5th at p. 384; see *Contreras, supra*, 5 Cal.App.5th at pp. 404-405.) If the moving party fails to demonstrate that any of the challenged causes of action arise from protected activity, the court denies the motion. (*City of Cotati, supra*, 29 Cal.4th at pp. 80-81; *Trilogy at Glen Ivy Maintenance Assn. v. Shea Homes, Inc.* (2015) 235 Cal.App.4th 361, 367.) If the defendant makes the required showing at the first step, "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, at p. 384.) We review de novo an order granting or denying a special motion to strike under section 425.16. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

---

to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

B. *The Complaint Does Not Arise from Protected Activity*

1. *The "Arising From" Requirement and Government Action*

"'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e).'" (*Park*, *supra*, 2 Cal.5th at p. 1063; accord, *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66; *Contreras*, *supra*, 5 Cal.App.5th at pp. 404-405.) Those categories are (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; and (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. (§ 425.16, subd. (e).)

"[I]n ruling on [a special motion to strike], courts should consider the elements of the challenged claim and what actions by defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, 2 Cal.5th at p. 1063; see *Baral*, *supra*, 1 Cal.5th at p. 396 [a defendant filing a special motion to strike must identify all allegations of protected activity and show the challenged cause of action arises from that protected activity].) "Critically, 'the defendant's act underlying the

9

plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'" (*Park*, at p. 1063.) "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of [section 425.16].'" (*Park*, at p. 1063; see *City of Cotati*, *supra*, 29 Cal.4th at p. 78 [a lawsuit may be in "response to or in retaliation for" protected activity without arising from it].) "Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Park*, at p. 1063; accord, *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

The Supreme Court recently considered the "arising from" requirement in the context of government decisionmaking.[5] In *Park*, *supra*, 2 Cal.5th 1057, an assistant college professor sued a university for employment discrimination after the university denied him tenure. (*Id.* at p. 1061.) The university argued the plaintiff's "suit arose from its decision to deny him tenure and the numerous communications that led up to and followed that decision, [and] these communications were protected activities." (*Ibid.*) In rejecting that argument, the Supreme Court held: "[A] claim is not subject to a motion to strike [under section 425.16]

---

[5] In *Vargas v. City of Salinas* (2009) 46 Cal.4th 1 the Supreme Court, without deciding whether "the California Constitution *directly* protects government speech in general or [certain] types of communications of a municipality," stated that "section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity." (*Vargas*, at p. 17.)

10

simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park,* at p. 1060.)  The Supreme Court explained that the plaintiff's claim for employment discrimination "depend[ed] not on the grievance proceeding, any statements, or any specific evaluations of him in the tenure process, but only on the denial of tenure itself and whether the motive for that action was impermissible.  The tenure decision may have been communicated orally or in writing, but that communication does not convert [the plaintiff's] suit to one arising from such speech." (*Id.* at p. 1068.)

Park cited with approval several Court of Appeal decisions, including *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343 (*San Ramon*).  (*Park, supra,* 2 Cal.5th at pp. 1064-1065.)  In *San Ramon*, a fire protection district sued a county retirement board over the board's decision to impose new pension contribution requirements.  (*San Ramon*, at p. 348.)  The board filed a special motion to strike under section 425.16 and argued the suit arose out of the deliberations and votes that produced the decision. The court affirmed an order denying the motion, distinguishing between the board's allegedly wrongful act (the decision setting contribution levels) and the preceding deliberations and vote: "[T]he fact that a complaint alleges that a public entity's action was taken as a result of a majority vote of its constituent members does not mean that the litigation challenging that action *arose from* protected activity, where the measure itself is

11

not an exercise of free speech or petition.  Acts of governance mandated by law, without more, are not exercises of free speech or petition." (*San Ramon*, at p. 354.)  The court held "the litigation [did] not arise from the speech or votes of public officials, but rather from an action taken by the public entity administered by those officials." (*Id.* at p. 347; see also *Schwarzburd v. Kensington Police Protection & Community Services District Board* (2014) 225 Cal.App.4th 1345, 1355 [distinguishing between actions against individuals based on "*how* [those individuals] voted and expressed themselves at [an official proceeding]" and actions against government entities based on "'collective action'"]; cf. *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 426 ["votes taken after a public hearing qualify as acts *in furtherance* of constitutionally protected activity," and "elected officials may assert the protection of section 425.16 when sued over how they voted without chilling citizens' exercise of their right to challenge government action by suing the public entity itself"].)

*Park* also cited with approval *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207 (*Graffiti Protective Coatings*).  (*Park, supra*, 2 Cal.5th at p. 1065.)  In *Graffiti Protective Coatings* the plaintiff sued a city after the city terminated the plaintiff's contract to clean bus stations and awarded a new contract to the plaintiff's competitor without going through the required competitive bidding process.  (*Graffiti Protective Coatings*, at p. 1211.)  The city moved to strike the complaint under section 425.16 and argued that the plaintiff's claims were based on communications with the interested parties and that the maintenance of the city's bus stops was an issue of public interest.  (*Id.* at p. 1213.)  After the trial court granted the city's motion, the Court of Appeal reversed:  "The

communications [among the parties] assist in telling the story. But [the plaintiff's] claims against [the city] are not based on those communications. Rather, liability is premised on state and municipal laws requiring [the city] to award certain contracts through competitive bidding." (*Id.* at p. 1215; see *Park*, *supra*, 2 Cal.5th at p. 1065 ["[w]hile communications by the city preceding its decision might be helpful in establishing what events led to the change in contract, the contractor's claims were not based on them, but on the award of a new contract in alleged violation of laws regulating competitive bidding"].)

Finally, *Park* cited *Nam v. Regents of University of California* (2016) 1 Cal.App.5th 1176 (*Nam*), in which the plaintiff, a medical resident at a university medical center, sued the university for sexual harassment, discrimination, and wrongful termination. (*Park*, *supra*, 2 Cal.5th at p. 1066.) The university argued the plaintiff's claims arose from complaints communicated to the university about the resident, written warnings the university issued to her, an investigation conducted by the university, and the written notice informing the plaintiff of her termination. (*Nam*, at p. 1186.) The court in *Nam* held the plaintiff's claims did not arise from those communications, but instead arose from the alleged retaliatory conduct of terminating her. (*Id.* at p. 1192.) The Supreme Court in *Park* observed: "*Nam* illustrates that while discrimination may be carried out by means of speech, such as a written notice of termination, and an illicit animus may be evidenced by speech, neither circumstance transforms a discrimination suit to one arising from speech. What gives rise to liability is not that the defendant spoke, but that the defendant denied the plaintiff a benefit, or subjected the plaintiff to a burden, on account of a discriminatory or retaliatory consideration." (*Park*, at p. 1066.)

*Park* and the decisions the Supreme Court discussed in *Park* recognized that a contrary reading of the "arising from" requirement would have "significant impacts the Legislature likely never intended." (*Park*, *supra*, 2 Cal.5th at p. 1067; see *Nam*, *supra*, 1 Cal.App.5th at p. 1189; *Graffiti Protective Coatings*, *supra*, 181 Cal.App.4th at pp. 1124-1125; *San Ramon*, *supra*, 125 Cal.App.4th at p. 358.) "Government decisions are frequently 'arrived at after discussion and a vote at a public meeting.'" (*Park*, at p. 1067; see *San Ramon*, at p. 358.) "Failing to distinguish between the challenged decisions and the speech that leads to them or thereafter expresses them 'would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power.'" (*Park*, at p. 1067; see *Nam*, at p. 1189 [applying section 425.16 to a cause of action for harassment, discrimination, or retaliation "is at odds with the purpose of [the statute], which was designed to ferret out meritless lawsuits intended to quell the free exercise of First Amendment rights, not to burden victims of discrimination and retaliation with an earlier and heavier burden of proof than other civil litigants and dissuade the exercise of their right to petition for fear of an onerous attorney fee award"]; *Graffiti Protective Coatings*, at p. 1211 [applying section 425.16 to causes of action challenging the validity or application of government action or decisions "would discourage attempts to compel public entities to comply with the law"]; *San Ramon*, *supra*, 125 Cal.App.4th at p. 357 [applying section 425.16 to a mandamus action challenging a government decision "would significantly burden the petition rights of those seeking mandamus review for most types of governmental action"]; see also *USA Waste of California, Inc. v. City of Irwindale* (2010) 184 Cal.App.4th 53, 65 [making "[a]ctions to enforce, interpret or invalidate governmental

14

laws . . . subject to being stricken under [section 425.16]" would significantly burden "efforts to challenge governmental action"].)

###### 2. *The Shahbazians' Causes of Action Arise from the City's Decisions To Grant and Deny Building Permits, Not from Protected Activity*

The City contends the Shahbazians' causes of action arise from speech or conduct protected by section 425.16, subdivisions (e)(2), (e)(3), and (e)(4). Therefore, the City must show the Shahbazians' causes of action arise from a written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; from a written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or from other conduct in furtherance of the exercise of the rights of petition or of free speech in connection with a public issue or an issue of public interest.

Even if granting or denying a building permit is an "issue of public interest," as the City contends and as required by section 425.16, subdivisions (e)(3) and (e)(4), the City has not identified any written or oral statement or writing or any conduct in furtherance of the exercise of its rights to petition or speech from which the Shahbazians' causes of action arise. The City variously describes the targets of the Shahbazians' claims as "the investigation and deliberation of permit issues in and related to official proceedings," "the City's investigation and expressive statements, writings and conduct in the application of [municipal] ordinances," "how the [City] expressed [itself] in purportedly favoring the Hessers over [the Shahbazians]," "the City's expressive communicative conduct in denying [the

15

Shahbazians'] grievances while purportedly enforcing the Hessers' grievances against [the Shahbazians]," and the City's "public participation with [the Shahbazians] and the Hessers involving disputes over ocean views and privacy rights." For all the City's complaints about the Shahbazians' "artful pleading," the City manages to avoid identifying any statement or writing on which the Shahbazians' causes of action are based, disclosing who made or authored those statements or writings and when, and explaining how the Shahbazians' complaint would "chill the valid exercise of constitutional rights." (See *Contreras*, *supra*, 5 Cal.App.5th at p. 404; see *Rusheen*, *supra*, 37 Cal.4th at p. 1055.)[6]

The reason the City cannot be any more specific is that the Shahbazians' causes of action do not arise from any statements, writings, or conduct in furtherance of the City's rights to petition or speech. Instead, they arise from the City's decisions to grant the Hessers a permit for their wall (allegedly in violation of local laws) and to deny the Shabazians a permit for their deck. (See *Graffiti Protective Coatings*, *supra*, 181 Cal.App.4th at p. 1218 [plaintiff's claims were based on violations of state and municipal laws, not on any statement or writing or conduct in furtherance of the defendants' right of petition or free speech].) While the City's decisions followed public hearings at which members of the city council and City employees undoubtedly exercised their free speech rights, the Shahbazians' causes of action do not arise from

---

[6] In its reply brief the City cites several cases for the proposition that a cause of action "based on the submission of site maps and planning documentation to a city in connection with a permitting process" satisfies the first step of the section 425.16 analysis. The City, however, has not identified any such submissions giving rise to the Shahbazians' causes of action.

(or even allude to) that speech.  (See *Park*, *supra*, 2 Cal.5th at p. 1060.)  Moreover, the elements of the Shahbazians' causes of action—negligence, inverse condemnation, and selective enforcement—do not require the Shahbazians to prove the City made any statement or writing or otherwise took action to further the City's exercise of its constitutional rights to free speech and to petition.  (See *id.* at p. 1063.)

The authorities cited by the City do not support a different conclusion.  The City argues the circumstances here are more like those in *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358 (*City of Costa Mesa*) and *Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252 (*Levy*) than those in *San Ramon* and *Graffiti Protective Coatings*.  Neither *City of Costa Mesa* nor *Levy* supports the City's position.

In *City of Costa Mesa*, *supra*, 214 Cal.App.4th 358 a city sued a commercial landlord for injunctive relief to abate a public nuisance and refused to issue any new business licenses for the property until the landlord complied.  (*Id.* at pp. 365-366.)  The landlord filed a cross-complaint for slander, trade libel, and interference with prospective economic advantage, alleging city employees made certain statements to the landlord's prospective tenants and potential contractors about illegal activity at the landlord's property, including that the landlord "'ha[d] been convicted of prostitution and drug dealing that occurred at the Property'" and that "'the entire building'" would be "'shut down because of illegal activity that [was] conducted there.'"  (*Id.* at pp. 365-367.)  On appeal from an order granting a special motion to strike under section 425.16, the court held the landlord's causes of action arose from "oral statements 'made in connection with an issue under consideration or review by

17

a[n] . . . executive . . . body'" under section 425.16, subdivision (e)(2). (*City of Costa Mesa*, at p. 372.)

The City appears to argue *City of Costa Mesa* is similar to this case because both cases involved statements made by employees of a city's planning and code enforcement departments related to the investigation of a property. In contrast to the statements alleged in the landlord's complaint in *City of Costa Mesa*, however, the City has not identified any specific statements underlying the Shahbazians' causes of action. The City suggests statements "must naturally have occurred" in connection with its investigation of the permits at issue, but those (unidentified) statements are not the "principal thrust" of the Shahbazians' causes of action.[7] In *City of Costa Mesa* the alleged causes of action "would have no basis in the absence of" the protected statements. (See *Contreras*, *supra*, 5 Cal.App.5th at p. 412.) Here, the statements the City contends must have been made were, at most, incidental to the conduct giving rise to the complaint and are not subject to section 425.16. (See *Baral*, *supra*, 1 Cal.5th at p. 394 ["[a]ssertions that are 'merely incidental' or 'collateral' are not subject to section 425.16"]; *Rand*

---

[7] In *Park* the Supreme Court acknowledged but did not apply the "principal thrust or gravamen" test for determining whether a cause of action arises from protected activity under section 425.16. (See *Park*, *supra*, 2 Cal.5th at pp. 1061.) Instead, in analyzing whether "the relationship a defendant must show between a plaintiff's claim and the sorts of speech on public matters the Legislature intended to protect" under section 425.16 (*Park*, at p. 1062), the Supreme Court considered "the elements of the challenged claim and what actions by defendant supply those elements and consequently form the basis for liability" (*id.* at p. 1063). Under either test the City has failed to demonstrate the Shahbazians' causes of action arise from protected activity.

*Resources, LLC v. City of Carson* (2016) 247 Cal.App.4th 1080, 1093 ["[t]he mere fact that some speech occurred in the course of the asserted breach [of contract] does not mean that the cause of action arises out of protected free speech"], review granted Sept. 21, 2016, S235735.)

Moreover, *City of Costa Mesa* actually supports distinguishing between the kinds of governmental decisions the Shahbazians challenge and statements that may have led to those decisions, which the Shahbazians do not challenge. (See *Park, supra*, 2 Cal.5th at p. 1060; *Bonni v. St. Joseph Health System* (2017) 13 Cal.App.5th 851, 862-863 ["merely because a process is communicative does not mean that plaintiff's claim necessarily arises from those communications"].) The court in *City of Costa Mesa* noted the landlord sued the city "for relief based on the oral statements [and did] *not* challeng[e] the underlying acts (the refusal of the [c]ity and its employees to issue licenses)." (*City of Costa Mesa, supra*, 214 Cal.App.4th at p. 375, italics added.) This case is the exact opposite of *City of Costa Mesa*: The Shahbazians sued the City based on the City's underlying acts and not its oral statements or other expressive conduct.

In *Levy, supra*, 114 Cal.App.4th 1252 the plaintiffs' neighbor complained to a city council member about a playhouse the plaintiffs built in their backyard. (*Id.* at p. 1255.) The councilmember sent an inquiry to the director of planning and community development and the city manager suggesting the playhouse did not comply with certain code requirements. (*Id.* at p. 1256.) Several months later the city's building inspector sent the plaintiffs a notice of violation directing them to remove or make certain modifications to the playhouse. (*Ibid.*) The plaintiffs sued and sought a declaration that the city charter

19

precluded city council members "from engaging in acts designed to influence [c]ity administrative staff . . . with respect to zoning enforcement matters such as the [plaintiffs'] playhouse." (*Id.* at p. 1257, italics omitted.) In other words, the plaintiffs challenged the legality of the councilmember's communications with city employees. Reversing an order denying the city's special motion to strike under section 425.16, the court in *Levy* held that the neighbor's "act of contacting her representative and [the councilmember's] act of contacting planning staff [were] petitions for grievances against the government protected by the First Amendment." (*Levy*, at p. 1258.)

The City argues *Levy* is analogous to this case because "the Hessers' and [Shahbazians'] cross petitioning rights inseparably involve the City." That may be, but the Shahbazians do not allege any cause of action implicating any party's right to petition for grievances. Indeed, the Shahbazians allege they were *denied* the opportunity to petition the City when the City issued the Hessers the initial "after-the-fact" permit without giving the Shahbazians an "opportunity to be heard." Unlike *Levy*, the causes of action alleged here do not attempt to chill speech or petition rights of the City or any of its representatives.

Finally, the City cites *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 (*Kibler*) and *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387 (*Vergos*) for the proposition that, because a governmental entity's decision "is an integral part of the official proceedings," the act of issuing a decision is protected activity under section 425.16, subdivision (e)(2). (See § 425.16, subd. (e)(2) [protected activity includes statements made in connection with an issue under consideration or review by an "official proceeding authorized by law"].) The Supreme Court, however, rejected this argument in *Park*, noting that

20

courts had "overread" *Kibler*.  (*Park*, *supra*, 2 Cal.5th at p. 1070.)
The Supreme Court stated, "*Kibler* does not stand for the
proposition that . . . decisions reached in a[n] [official proceeding],
as opposed to statements in connection with that [proceeding],
are protected."  (*Park*, at p. 1070.)  Similarly, with regard to
*Vergos*, the Supreme Court in *Park* stated, "*Vergos* does not stand
for the proposition that a suit alleging an entity has made a
discriminatory decision necessarily also arises from any
statements by individuals that may precede that decision, or from
the subsequent communication of the decision that may follow."
(*Park*, at p. 1070.)  The Supreme Court explained that "none of
the core purposes the Legislature sought to promote when
enacting [section 425.16] are furthered by ignoring the distinction
between a government entity's decisions and the individual
speech or petitioning that may contribute to them."  (*Park*, at
p. 1071.)[8]

The City's attempts to distinguish *Graffiti Protective
Coatings* and *San Ramon* also fail.  The City argues those cases
challenged the validity of laws "on which governmental activity
occurred," whereas "this tort lawsuit is not about determining the
legality of the ordinances, but rather about obtainable damages."
The City misreads *Graffiti Protective Coatings* and *San Ramon*.
In both cases the plaintiffs (like the Shahbazians) challenged the
legality of the defendants' actions without challenging the
validity of applicable laws.  (See *Graffiti Protective Coatings*,

_____

[8]    *Park* also disapproved *Tuszynska v. Cunningham* (2011)
199 Cal.App.4th 257 to the extent that decision "presupposes
courts deciding anti-SLAPP motions cannot separate an entity's
decisions from the communications that give rise to them, or that
they give rise to."  (*Park*, *supra*, 2 Cal.5th at p. 1071.)

21

*supra*, 181 Cal.App.4th at pp. 1212-1213 [the plaintiff's cause of action "sought to compel the City to award the bus stop maintenance contract through competitive bidding" as required by the Public Contract Code and the city's municipal code]; *San Ramon*, *supra*, 125 Cal.App.4th at p. 348 [the plaintiff alleged the defendants "'fail[ed] to comply with the mandatory duties set forth in provisions of [the applicable Government Code sections]'"].)  Moreover, the propriety of a special motion to strike under section 425.16 does not depend on whether the plaintiff challenges the validity of, or compliance with, an applicable law; it depends on whether the plaintiff challenges speech or petitioning activity.

The City also argues *Graffiti Protective Coatings* and *San Ramon* are distinguishable because they involved mandamus petitions and not tort actions.  Thus, the City argues, granting its special motion to strike would not chill public interest litigation like the lawsuits brought in *Graffiti Protective Coatings* and *San Ramon*.  Courts have repeatedly held, however, that the scope of protected activity under section 425.16 does not depend on the form of a plaintiff's cause of action.  (See, e.g., *Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 92; *Nam*, *supra*, 1 Cal.App.5th at p. 1186; *Trilogy at Glen Ivy Maintenance Assn. v. Shea Homes, Inc.*, *supra*, 235 Cal.App.4th at p. 368; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1478; *Midland Pacific Bldg. Corp. v. King* (2007) 157 Cal.App.4th 264, 272; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281.)

Moreover, the City's argument ignores the serious implications of granting its motion.  If section 425.16 applied to claims based on decisions like those the Shahbazians challenge, plaintiffs bringing tort actions challenging decisions government entities make every day would have to satisfy the second step of

the section 425.16 analysis before proceeding with their cases. For example, a plaintiff injured by dangerous conditions on public property after a city debated its budget and decided to reduce expenditures to maintain the property would have to demonstrate a probability of success before taking discovery. (See *Bonni v. St. Joseph's Health Systems*, *supra*, 13 Cal.App.5th at p. 864 [defendants who can satisfy the first step of the section 425.16 analysis "shift the burden of proof to [plaintiffs], who, without the benefit of discovery and with the threat of attorney fees looming, [are] obligated to demonstrate the likelihood of prevailing on the merits"]; *San Ramon*, *supra*, 125 Cal.App.4th at p. 358 [if mandamus petitioners "were routinely subject to a special motion to strike . . . [they] could be forced to make a prima facie showing of merit at the pleading stage"].) Such a burden would discourage lawsuits contesting government decisions like those in this case, a consequence the Legislature did not intend in enacting section 425.16. (See *San Ramon*, at p. 358, fn. 9 [section 425.16 is not intended to discourage "petitions seeking to overturn the denial of a planning or zoning permit applied for by an individual property owner"]; see generally *Park*, *supra*, 2 Cal.5th at p. 1071, fn. 4 [the Legislature's concern for citizens' rights to petition the government "are promoted, not impaired, by differentiating between individual speech that contributes to a public entity's decision and the public entity decision itself"].)[9]

---

[9] Because the City did not satisfy its burden with respect to the first step of the section 425.16 analysis, we do not consider whether the Shahbazians showed they were likely to prevail on the merits of their causes of action. (See *City of Cotati, supra,* 29 Cal.4th at pp. 80-81; *Graffiti Protective Coatings, supra*, 181 Cal.App.4th at p. 1225; *San Ramon, supra,* 125 Cal.App.4th at p. 357.)

## DISPOSITION

The order is affirmed.  The Shahbazians are to recover their costs on appeal.


SEGAL, J.

We concur:


ZELON, Acting P. J.


BENSINGER, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.