Filed 3/15/22  From The Earth v. City of Commerce CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| FROM THE EARTH, LLC, | B311070 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV36221) |
| CITY OF COMMERCE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael P. Linfield, Judge.  Affirmed.

Urtnowski & Associates and  J. Brian Urtnowski, Lisamarie McDermott, for Plaintiff and Respondent.

Alvarez-Glasman & Colvin and Roger A. Colvin, Tania Ochoa, for Defendant and Appellant.

_____

## INTRODUCTION

The City of Commerce (the City) denied several commercial cannabis licenses to From The Earth, LLC after From The Earth refused to participate in an alleged extortion and kickback scheme operated by a cannabis lobbyist who was colluding with City officials. From The Earth sued alleging the City violated the equal protection clause of the Fourteenth Amendment by denying From The Earth's license application on pretextual grounds while approving cannabis licenses for other similar applicants. The City filed a special motion to strike under Code of Civil Procedure section 425.16 (an anti-SLAPP motion) arguing that "communicative activity constituting a conspiracy" by the City in connection with a public issue qualified as "protected activity" under the anti-SLAPP statute. The trial court denied the motion finding From The Earth's suit did not arise from protected activity. The City timely appealed. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. From The Earth Applies to the City for Cannabis Licenses and Advances in the Application Process

In October 2018 From The Earth applied to the City of Commerce for non-storefront commercial cannabis delivery, cultivation, manufacturing and distribution business licenses. The City's cannabis license application process has three phases: 1) Initial Application Screening and Preliminary Determination of Eligibility; 2) Investigation, Scoring and Ranking; and 3) Final Ranking and City Council Consideration. As part of its application, From The Earth completed a mapping report

2

verifying that its proposed business location was more than 600 feet from any schools, day cares, parks, and youth centers.[1]

On October 31, 2018 the City notified From The Earth that its application had advanced to phase two of the cannabis license application process. On November 7, 2018 the City notified From The Earth it was a "qualified applicant" and its application had advanced to the third and final phase, City Council Consideration.

On November 16, 2018 the City sent From The Earth a conditional "notice of selection," stating the City Council had voted to authorize From The Earth to continue to advance through the permit process "in order to ultimately establish a lawful commercial cannabis business in the City." The notice of selection was contingent on From The Earth fulfilling all applicable requirements, including obtaining a recommendation of approval from the City Planning Commission and the City Council's final approval of From The Earth's development agreement.

On November 30, 2018 the City sent an email notifying From The Earth that it was authorized to apply for a temporary business license to engage in commercial cannabis activities. The City addressed this email to two principals of From The Earth as well as to "Mario"—i.e. Mario Beltran, a lobbyist who allegedly had been pressuring From The Earth to retain his services, but whom From The Earth had neither retained nor mentioned to the City.

---

[1] City of Commerce Municipal Code section 5.61.060(2) requires that cannabis businesses be located more than 600 feet from schools, day cares or youth center facilities.

3

## B. From The Earth Declines to Hire Lobbyist Mario Beltran

Beltran is a former City of Bell councilmember. From The Earth understood Beltran had a felony record and a reputation for attempting to assert influence in cities that were awarding cannabis licenses.

Around the time of the City's November 7, 2018 email, Beltran telephoned From The Earth. Beltran allegedly stated that if From The Earth did not engage him as a lobbyist for its application process and pay Beltran certain kickbacks, he would ensure the City would deny From The Earth's cannabis license application. From The Earth did not respond or engage Beltran's services after this phone call.

On November 30, 2018 Beltran emailed From The Earth and attached a contract. Among other things the contract required From The Earth to: make an initial payment of $50,000 to Beltran upon securing its permits; pay Beltran $2,500 monthly for an indefinite amount of time; and encumber any future purchaser of From The Earth's business to also pay Beltran $2,500 per month (or alternatively, pay Beltran 10 percent of the purchase price), in exchange for Beltran to "solidify [From The Earth's] efforts to secure local permits or licenses to operate cannabis businesses, specifically in the *City of Commerce*." Beltran requested From The Earth sign and return the contract to Beltran within 24 hours.

Within minutes of From The Earth receiving Beltran's November 30 email and contract, the City sent its email to From The Earth, co-addressed to Beltran, authorizing From The Earth to apply for a temporary commercial cannabis business license. From The Earth principal Kintu Patel immediately asked the

4

City to remove Beltran from any future correspondence with From The Earth. On or about December 1, 2018 Patel told Beltran From The Earth would not retain him for any lobbying services.

## C. The City Denies From The Earth's Application for Cannabis Licenses

On February 13, 2019 the Planning Commission considered From The Earth's commercial cannabis license application. The Planning Commission expressed concerns about the proposed location's "close proximity to a high school," and voted to recommend the City Council deny the application. From The Earth unsuccessfully attempted to appeal the Planning Commission's recommendation, a nonappealable decision.

During the April 30, 2019 City Council meeting, the councilmembers considered and denied From The Earth's application for commercial cannabis licenses. The councilmembers discussed staff concerns about From The Earth's persistent communications with the City and its attempts to appeal the Planning Commission recommendation. The City Council also expressed trepidation that From The Earth's proposed location was about 1,500 feet from Vail High School, a continuation school with an "at-risk" student population. When the City Council raised issues regarding the proposed locations of other cannabis business license applicants at the same meeting, the City allegedly allowed those applicants to change their

proposed business premises and thereafter granted those applications.[2]

### D. Complaint and Anti-SLAPP Motions

From The Earth filed a complaint against the City and Beltran on September 22, 2020 alleging an equal protection violation of the Fourteenth Amendment (42 U.S.C. § 1983) by the City and extortion by Beltran (Pen. Code, § 523).  Beltran, who is not a party to this appeal, filed a special motion to strike the complaint under Code of Civil Procedure section 425.16 on October 28, 2020, which the trial court denied on December 1, 2020.[3]

On November 23, 2020 the City filed its special motion to strike under section 425.16  arguing the complaint targeted "protected conduct by the City in furtherance of its constitutional right to petition and/or free speech in connection with a public issue," and that From The Earth's equal protection action "attempts to chill Defendants' free speech in discussing issues concerning commercial cannabis businesses" in the City.  The City asserted that a communication could be protected even if it was illegal and "communicative activity constituting a conspiracy in connection with an issue under review by the city council satisfies defendant's first prong burden."

The trial court denied the City's anti-SLAPP Motion concluding that From The Earth's claim against the City did not

---

[2]     According to From The Earth, the City gave applicants 18-006 and 18-053 the opportunity to change their proposed business locations.

[3]     All further undesignated statutory references are to the Code of Civil Procedure.

arise from any statements, writings or conduct in furtherance of the City's rights to petition or speech but instead arose from the City's decisions to deny From The Earth's cannabis applications and permits. Thus, the City had not met its initial burden to demonstrate that From The Earth's allegations arose from protected activity.

The City moved for reconsideration of the trial court's denial of its anti-SLAPP motion on the ground the court improperly refused to strike the extortion-related allegations of the complaint in lieu of striking the entire complaint. On January 28, 2021 the trial court denied the City's motion for reconsideration ruling the City had not provided the court with evidence of the existence of "new circumstances" that would change the disposition of the order denying the anti-SLAPP motion.

This appeal followed.

## DISCUSSION

### A. Section 425.16, the "Arising from" Requirement, and Standard of Review

Under section 425.16, commonly known as the anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in

7

connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

In ruling on an anti-SLAPP motion, the trial court engages in a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*), accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89], italics omitted (*Navellier*).) "If the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity, the court properly denies the motion to strike without addressing the second step (probability of success)." (*C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 698

(*Mooradian*); see, e.g., *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81 (*City of Cotati*).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063 (*Park*).) "The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); accord, *Park*, at p. 1060.) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Wilson,* at p. 884; accord, *Park*, at p. 1063.)

We review de novo an order granting or denying an anti-SLAPP motion (*Wilson, supra,* 7 Cal.5th at p. 884; *Park, supra,* 2 Cal.5th at p. 1067), "considering the parties' pleadings and affidavits describing the facts on which liability or defenses are predicated." (*Mooradian, supra,* 43 Cal.App.5th at p. 699, citing § 425.16, subd. (b)(2); see *Navellier, supra,* 29 Cal.4th at p. 89.)

## B. From The Earth's Complaint Does Not Arise from Protected Activity by the City of Commerce

On appeal, the City contends that this case "arises from" an alleged "conspiracy to commit extortion between a city and a third party against a commercial cannabis business in relation to the city's business permit application process," based on the

9

City's purported communications with Beltran about its cannabis permit application process. The City argues that From The Earth's equal protection claim arises from these presumptive communications, not from the City's denial of the permit, and that such communications are protected activity under the anti-SLAPP statute.

To determine whether From The Earth's claim arises from protected activity, we consider the elements of the claim and what alleged actions by the defendant form the basis for liability under those elements. (*Wilson, supra,* 7 Cal.5th at p. 884.) The City must show that From The Earth's Fourteenth Amendment equal protection cause of action "arise[s] from a written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; from a written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or from other conduct in furtherance of the exercise of the rights of petition or of free speech in connection with a public issue or an issue of public interest." (*Shahbazian v. City of Rancho Palos Verdes* (2017) 17 Cal.App.5th 823, 834 (*Shahbazian*).) The parties do not dispute that the City's cannabis license application process is an issue of public interest.

As relevant here, a "class of one" equal protection claim under the Fourteenth Amendment "contains the following essential elements: (1) plaintiff was treated differently from other similarly situated persons [or corporations]; (2) the difference in treatment was intentional; and (3) there was no rational basis for the difference in treatment." (*Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113

10

Cal.App.4th 597, 605, fn. omitted, citing *Village of Willowbrook v. Olech* (2000) 528 U.S. 562.) The elements of From The Earth's equal protection cause of action do not require it to prove the City made any statement or writing or otherwise took action to further the City's exercise of its constitutional rights to free speech and to petition.

From The Earth alleges it established each of the elements of a "class of one" equal protection claim against the City for the City's unequal application of its cannabis licensing guidelines. First, From The Earth claims the City treated it differently from other similar applicants by pretextually denying its application based on the proposed location of its commercial operations, while allowing other applicants (but not From The Earth) the opportunity to move their proposed business premises when location was a concern. Second, From The Earth claims the City's disparate treatment of applicants was intentional and the City's purported basis for denying From The Earth's cannabis application was a sham. In support of its claim From The Earth alleges Beltran threatened to sabotage its application process with the City if From The Earth failed to hire him. The City also included Beltran on the application-related communications without From The Earth having informed the City that Beltran had any involvement in its license application. Further, the City denied From The Earth's license application shortly after it refused to engage Beltran as a lobbyist. The inference is there was collusion between Beltran and the City that ultimately caused the City to deny From The Earth's license application. Third, From The Earth contends the City's alleged concern about From The Earth's proposed location being too close to a school was not a rational basis for the denial given that the intended

11

premises were more than the 600-foot minimum distance and the City permitted other applicants to change their proposed locations.

We conclude that From The Earth's Fourteenth Amendment equal protection claim against the City, for denying From The Earth's cannabis business license application, does not arise from protected activity. Section 425.16 does not generally protect a governmental entity's decisions to issue or deny permits. (*Shahbazian, supra,* 17 Cal.App.5th at p. 826.) In analyzing a claim based on discriminatory government action, the court must distinguish between challenges to government decisions and "statements that may have led to those decisions." (*Id.* at pp. 836-837.) "[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity." (*Park, supra,* 2 Cal.5th at p. 1060.) The foundation of From The Earth's equal protection claim is the City's denial of From The Earth's cannabis license application and the City's divergent treatment of similarly situated applicants — not the City's "speech."

The purported or inferred communication between the City and Beltran is merely "evidence of liability" supporting From The Earth's claim that the City intentionally engaged in differential treatment when it denied From The Earth's application; the communication itself is not "the wrong complained of" in this cause of action. (See *Park*, *supra*, 2 Cal.5th at p. 1060.) As the court held in *Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, (2010) 181 Cal.App.4th 1207, 1215, "[t]he communications assist in telling the story. But [the plaintiff's] claims against [the city] are not based on those communications."

12

The City argues it met the first prong of the section 425.16 analysis because From The Earth's Fourteenth Amendment equal protection claim "attempts to chill the City's free speech in discussing issues concerning commercial cannabis businesses in the City." The City is incorrect. From The Earth challenged the City's denial of its permit alleging it received differential treatment because it refused to bribe the City through payments made via a lobbyist.[4]

---

[4] Although it does not affect our conclusion, we agree with the City and the trial court that the illegality exception of *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*) is inapplicable here. *Flatley* held that conduct "illegal as a matter of law" is not protected by the anti-SLAPP statute (*id.* at p. 317) and concluded that an attorney's demand letters (amounting to criminal extortion) were not subject to a special motion to strike because "[e]xtortion is not a constitutionally protected form of speech." (*Id.* at p. 328.) In *Flatley*, however, the evidence of the attorney's communications was uncontroverted and conclusive. (*Id.* at p. 332, fn. 16 [conclusion that the communications constituted criminal extortion as a matter of law was "based on the specific and extreme circumstances of this case"]; see *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1188, disapproved on other grounds in *Baral, supra,* 1 Cal.5th at p. 396, fn. 11 [*Flatley* exception "exists only where 'the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence'"].) Here the City unequivocally denies From The Earth's allegations regarding bribery; given the disputed contentions, we cannot resolve within the first prong analysis whether any activity amounted to extortion as a matter of law. (*See Flatley*, at p. 316 ["If . . . a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits"]; *Bergstein v. Stroock & Stroock &*

We find that "granting a special motion to strike in these circumstances would chill citizens' attempts to challenge government action." (*Shahbazian, supra,* 17 Cal.App.5th at p. 826.) Because the City did not satisfy its burden with respect to the first prong of the section 425.16 analysis, the burden never shifted to From The Earth to demonstrate it was likely to prevail on the merits, and we do not address the second prong of the section 425.16 analysis here. (*Id.* at p. 839, fn. 9; *City of Cotati, supra,* 29 Cal.4th at pp. 80-81.)

## C. The Trial Court Did Not Err in Denying the City's Request to Strike the Extortion Allegations from the Complaint

The City also contends, as it did in its motion for reconsideration, that the trial court erred by not partially striking from the complaint "meritless claims arising from protected activity, i.e., the communicative conduct between the City and Beltran which allegedly amounted to a conspiracy to commit extortion." Although the City's anti-SLAPP motion sought to "dismiss" the complaint "in its entirety," at the hearing on its motion the City orally requested, at a minimum, the court partially strike the complaint. The trial court denied the request to partially strike the complaint concluding it was not procedurally appropriate for the City to raise the issue for the first time at the hearing.

---

*Lavan LLP* (2015) 236 Cal.App.4th 793, 810 [had defendants disputed any element of aiding and abetting claim, "no conclusion could be drawn, as a matter of law, that their conduct was illegal"].)

14

Irrespective of the timeliness or propriety of the City's request to partially strike the complaint, we find there was no basis for the trial court to strike the extortion allegations.  From The Earth asserted its cause of action for extortion solely against Beltran, not the City, and, as discussed above, the alleged events that demonstrated the extortion scheme were merely evidence to support From The Earth's equal protection cause of action against the City, not the claim itself.  "Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.]  Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra,* 1 Cal.5th at p. 394.

## DISPOSITION

The trial court's order denying the City's special motion to strike is affirmed.  From The Earth shall recover its costs on appeal.

WISE, J.*

We concur:

SEGAL, Acting P. J.          FEUER, J.

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15